IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ARNETHER O. PEEL,

                          Plaintiff,

        v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security
Administration,

                          Defendant.

CIVIL ACTION
NO. 15-255

## OPINION

**Slomsky, J.**                                                 **August 29, 2016**

### I.    INTRODUCTION

On January 22, 2015, Plaintiff Arnether O. Peel ("Plaintiff") filed a Complaint against Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner" or "Defendant").  (Doc. No. 4.)  In the Complaint, Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of Defendant's final decision denying his claim for Supplemental Security Income under Title XVI of the Social Security Act (the "Act").[1]  On August 20, 2015, United States Magistrate Judge Jacob P. Hart filed a Report and Recommendation ("R&R") recommending that the Court deny Plaintiff's Request for Review. (Doc. No. 18.)

_____

[1]  42 U.S.C. §405(g) states that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia."

Before the Court are Plaintiff's Objections to the R&R (Doc. No. 19), and Defendant's Response to Plaintiff's Objections (Doc. No. 21). Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a *de novo* review of the portions of the R&R to which objections have been made. After an independent review of the record and for reasons that follow, the Court finds that Plaintiff's Objections lack merit, and adopts and approves the R&R.

## II.  PROCEDURAL HISTORY

On January 10, 2012, Plaintiff filed an application for Supplemental Security Income ("SSI") with the Social Security Administration ("SSA" or "Agency"). (Administrative Record ("R.") at 134.) Plaintiff alleged a disability beginning on December 1, 2011. (Id.)

On March 29, 2012, Plaintiff's claim was denied. (Id. at 82-85.) On May 24, 2012, Plaintiff filed a written request for a hearing pursuant to 20 C.F.R. §§ 404.929 and 416.1429. (R. at 86-88.) The request was granted and on May 29, 2013, Plaintiff, who was represented by counsel, appeared before William A. Kurlander, Administrative Law Judge (the "ALJ"). (Id. at 11.) Plaintiff and Nancy Harter, "an impartial vocational expert," testified at the hearing. (Id. at 66.) On August 10, 2013, the ALJ, pursuant to the sequential evaluation process applicable to a claim of disability,[2] issued a decision denying Plaintiff's claim. (R. at 66-77.) On December 15, 2014, the Appeals Council denied Plaintiff's request for review. (Id. at 1–5.)

On January 22, 2015, Plaintiff filed a Complaint in this Court against the Commissioner seeking review of the final determination. (Doc. No. 4.) After both parties submitted briefs and documents in accordance with this Court's Procedural Order (Doc. No. 6), the Court referred the matter to United States Magistrate Judge Jacob P. Hart for a Report and Recommendation. (Doc. No. 17.) On August 20, 2015, Magistrate Judge Hart filed the R&R. (Doc. No. 18.) On August

---

[2] 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See also* Part III, *infra.*

28, 2015, Plaintiff filed Objections to the R&R.  (Doc. No. 19.)  On September 9, 2015, the Commissioner filed a Response to Plaintiff's Objections.  (Doc. No. 21.)  As stated previously, the Court must now "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  [The Court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

## III.   BACKGROUND

### A.   Plaintiff's History and Characteristics

Plaintiff was born on May 20, 1962.  (R. at 17.)  She was 49 years old on the date her application was filed.  She turned 50 while her application was pending, and is now within the "closely approaching advanced age" category pursuant to 20 C.F.R. § 416.963.

Plaintiff did not graduate high school and has a tenth grade education.  (Id. at 18.) Plaintiff's only work experience was as a volunteer school lunch aide during the calendar year 2004.  (Id.)  She was convicted of a drug felony in 1996, but testified she has not used drugs for some time.  (Id. at 20-21.)  She smokes a half pack of cigarettes per day.  (Id. at 21-22.)

Plaintiff lives with her daughter who was 15 years old at the time of the hearing.  (Id. at 17.)   Her daughter receives Social Security survivor benefits, of which Plaintiff is the representative payee.  (Id. at 17-18.)  Plaintiff cares for her daughter by feeding her, clothing her, and taking her to doctors.  (Id. at 18.)  Plaintiff is able to cook and clean, and goes shopping with her daughter.  (Id. at 34.)  She takes the bus and subway.  (Id. at 20.)  She visits with her mother almost on a daily basis.  (Id. at 23, 33.)  She also attends church twice a week, for service and Bible study, and volunteering to dust the church pews.  (Id. at 22-23.)

Plaintiff testified that she had been using a cane for a year and half.  (Id. at 19.)

3

**B.      Relevant Social Security Administration Review Standards**

A claimant proves she has a "disability" when she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to determine if a claimant possesses an impairment that prevents him from engaging in any substantial gainful activity, the Agency uses a five-step process:

(i)      At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii)     At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii)    At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv)     At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v)      At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4)(i)-(v).

Residual functional capacity is "the most [a claimant] can do despite [their] limitations." Id. § 404.1545(a)(1). The residual functional capacity may be "sedentary," "light," "medium," "heavy," or "extra heavy." Phan Bang v. Colvin, Civil Action No. 12-6951, 2014 WL 3700209,

at *2 (E.D. Pa. July 25, 2014).  "In evaluating a claimant's RFC, the ALJ considers all relevant evidence, including medical opinions, the claimant's statements about his or her impairments, and statements from medical sources."  Id. (citing 20 C.F.R. § 416.945(a)(3)).

### C.   The Findings to Which Plaintiff Objects

The ALJ found that Plaintiff had severe impairments including a knee disorder, degenerative disc disease, obesity, a major depressive disorder, a learning disorder, and a history of cocaine dependence in reported remission (R. at 68), but that she was not "disabled" within the meaning of the Social Security Act because she could perform the jobs of machine tender, laundry folder/sorter, or food preparation worker, e.g. shellfish cleaner.  (Id. at 76.)  Accordingly, the ALJ, on behalf of the Commissioner, denied Plaintiff's SSI claim.  (Id.)  In particular, the ALJ made the following findings:

1. The [Plaintiff] has not engaged in substantial gainful activity since December 1, 2011, the alleged disability onset date (20 CDR 416.971 *et seq.*).

2. The [Plaintiff] has the following severe impairments: a knee disorder, degenerative disc disease, asthma, obesity, a major depressive disorder, a learning disorder, and a history of cocaine dependence in reported remission (20 CDR 416.920(c)).

3. The [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CDR Part 404, Subpart P, Appendix 1 (20 CDR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, [the ALJ] find[s] that the [Plaintiff] retains the residual functional capacity to perform the exertional demands of light level work, or work which requires maximum lifting of twenty pounds and frequent lifting of ten pounds; she can sit up to six hours and stand and walk for up to six hours, in an eight hour workday (20 C.F.R. 416.967).  She can only occasionally balance, stoop, crouch, and push/pull with her right lower extremity, but cannot kneel or crawl.  She can have no more than occasional exposure to atmospheric irritants such as dust, fumes, gasses, odors, temperature extremes, wetness, or high humidity.  She needs a sit/stand option at her convenience, meaning that if she is sitting and experiences back or other pain, she can stand and stretch in place to alleviate her pain and continue working in the standing position if desired.  Similarly, if she is standing and experiences back or

other pain, she can sit down to continue her work in a sitting position if desired, in order to alleviate her pain.  She is limited to unskilled work with a reasoning level of one or two, as defined by the *Dictionary of Occupational Titles* with only occasional interaction with coworkers and supervisors, and no interaction with the general public.

5.  The [Plaintiff] has no past relevant work (20 CDR 416.965).

6.  The [Plaintiff] was born on May 20, 1962, and was 49 years old, which is defined as a younger individual age 18-49, on the date the application was filed.  The [Plaintiff] subsequently attained age 50 and changed age category to closely approaching advanced age (20 CDR 416.963).

7.  The [Plaintiff] has a limited education and is able to communicate in English (20 CDR 416.964).

8.  Transferability of job skills is not an issue in this case (20 CDR 416.968).

9.  Considering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform (CDR 416.969 and 416.969(a)).

10. The [Plaintiff] has not been under a disability, as defined in the Social Security Act, at any time through the date of this decision 920 CDR 416.920(g)).

(R. at 68-77.)

In the R&R, the Magistrate Judge concluded that the ALJ did not err in analyzing the evidence.  (Doc. No. 18.)  Thereafter, Plaintiff made three Objections to the R&R, which are as follows:

1.  The Magistrate Judge erroneously found that: "[T]he ALJ's determination that the record as a whole supported Dr. Sheikh's report as to Peel's functional limitations, rather than Dr. Punjabi's."

2.  The Magistrate Judge erroneously found that: "[T]he ALJ's decision not to credit Dr. Goode's findings of disabling limitations was supported by substantial evidence."

3.  The Magistrate Judge erroneously found that Peel failed to provide adequate proof of a "medical requirement" to use a cane.

(Doc. No. 19.)

## IV.    LEGAL STANDARD

When a district court reviews a final decision of the Commissioner of Social Security, the court must determine whether the record shows "substantial evidence" to support the Commissioner's decision.[3]  42 U.S.C. §§ 405(g), 1383(c)(3).  In making this decision, the Court reviews whether there is substantial evidence to support the Commissioner's decision that the plaintiff is not disabled.  Substantial evidence is defined as "more than a mere scintilla . . . [and is] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Cherry v. Barnhart, 29 F. App'x 898, 901 (3d Cir. 2002) (internal citations omitted).  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).

An ALJ, rendering a decision on behalf of the Commissioner, must set out a specific factual basis for each finding.  Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975).  The ALJ "must consider all the evidence and give some reason for discounting the evidence [the ALJ] rejects."  Ray v. Astrue, 649 F. Supp. 2d 391, 402 (E.D. Pa. 2009) (quoting Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994)).  Although the ALJ does not have to make reference to every relevant medical note in a voluminous medical record, the Court expects the ALJ, as the fact finder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.  See Reefer v. Barnhart, 326 F.3d 376, 381-82 (3d Cir. 2003).  Simply referring to "the record" as a whole is insufficient.

---

[3]  42 U.S.C. § 405, which governs the procedure for reviewing Social Security Benefit applications, states that the Commissioner is "directed to make findings of facts, and decisions" as to eligibility for benefits.  Pursuant to § 405(b)(1), if an applicant wishes to contest a decision of the Commissioner, the Commissioner must offer the applicant a hearing.  An ALJ conducts the hearing, after which a decision is rendered which affirms, modifies, or reverses the decision of the Commissioner.  Id.  For purposes of this Opinion, the terms "ALJ" and "Commissioner" will be used interchangeably.

Abshire v. Bowen, 662 F. Supp. 8, 9 (E.D. Pa. 1986).  In reviewing the record, the Court "may not weigh the evidence or substitute [its] own conclusions for those of the fact-finder." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

## V.   DISCUSSION

### A.   Objection One:  "The Magistrate Judge erroneously found that: '[T]he ALJ's determination that the record as a whole supported Dr. Sheikh's report as to Peel's functional limitations, rather than Dr. Punjabi's.'"

Plaintiff's first objection is regarding the weight the ALJ attributed to the opinions from Haresh Punjabi, M.D., the Agency's examining physician, and Feroz Sheikh, M.D., the Agency's non-examining physician as to Plaintiff's physical limitations.  (Doc. No. 19 at 1-4.) Plaintiff argues that because Dr. Punjabi was the examining physician, his opinion should have been given substantial weight by the ALJ, and that the ALJ impermissibly assigned limited weight to his opinion.  (Id.)  Plaintiff contends that the ALJ and Magistrate Judge failed to address the Social Security's Regulations and Rulings regarding evaluation of medical source opinions.  (Id. at 3-4.)

Plaintiff further claims that the Magistrate Judge impermissibly relied on "post-hoc rationalizations" made by the Commissioner rather than limiting review to the ALJ's decision. (Id.)  Plaintiff argues that the Magistrate Judge improperly added the following bolded reasoning to the ALJ's decision to afford little weight to Dr. Punjabi:

> Clearly, the ALJ was correct in stating that Dr. Punjabi's representations in the Medical Source Statement were inconsistent with his examination findings.  Most blatantly, the limitation to one hour of standing and walking in an entire workday is **inconsistent with his notation in the report that Peel could stand for a couple of hours, and her own apparent representation that she 'could walk quite a few blocks.'**  Further, the strict limitation in sitting is inconsistent with his very ordinary findings regarding the condition of Peel's back, such as her normal gait, **the ability to sit and rise easily, and the negative straight leg raising test**.

(Doc. No. 19 at 2 (emphasis in original).)   Plaintiff argues that the bolded language is the Commissioner's post-hoc rationalization set forth in the Commissioner's Response to the Request for Review.   (Id.)   Further, Plaintiff asserts that the Magistrate Judge impermissibly cited to Dr. Albert A. Weiss's medical records in discussing the weight afforded to Dr. Sheikh, instead of the ALJ's decision.   (Id. at 4.)   Plaintiff's arguments are unpersuasive for the following reasons.

### 1. The Magistrate Judge Did Not Impermissibly Rely on Post-Hoc Rationalizations

Although Plaintiff is correct that post-hoc rationalizations are generally inappropriate, that is not the case here.  With regard to post-hoc rationalizations, the court in Schuster v. Astrue stated:

> It is well established that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." SEC v. Chenery Corp., 318 U.S. 80, 87 (1943).  As such, "'[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision;' the Commissioner may not offer a post-hoc rationalization." Keiderling v. Astrue, No. Civ.A. 07–2237, 2008 WL 2120154, at *3 (E.D. Pa. May 20, 2008) (quoting Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000)).
>
> Nonetheless, the court is not required "to read the ALJ's opinion in a vacuum." Knox v. Astrue, No. Civ.A.09–1075, 2010 WL 1212561, at *7 (W.D. Pa. May 26, 2010).  The standard of review still requires that the reviewing court examine the record as a whole to determine whether the ALJ's reasoning is supported by substantial evidence. Gaul v. Barnhart, No. Civ.A. 07–351, 2008 WL 4082265, at *5 n.6 (E.D. Pa. Aug. 25, 2008).  "A 'comprehensive explanation' need not always accompany a decision to reject a piece of probative evidence, since 'a sentence or short paragraph would probably suffice' in most instances." Knox, 2010 WL 1212561, at *7 (quoting Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981)).  Moreover, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989).  Where the error by the ALJ is harmless and would not affect the outcome of the case, remand is not warranted. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

879 F. Supp. 2d 461, 466-67 (E.D. Pa. 2012).

Moreover, as noted, when a district court reviews a final decision of the Commissioner, the Court must determine whether the record shows "substantial evidence" to support the Commissioner's decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  In making this determination, the district court properly reviews the record.  Plaintiff's suggestion that the Court is limited to examine and cite to the ALJ's decision only is incorrect.  See Schuster, 879 F. Supp. 2d at 467 ("Far from being post-hoc rationalization, [reference to the record] did nothing more than reflect the Magistrate Judge's review of the record as a whole and expand upon a rationale already offered by the ALP."); Phan Bang v. Colvin, Civil Action No. 12-6951, 2014 WL 3700209, at *2 (E.D. Pa. July 25, 2014) ("In determining the existence of substantial evidence to support an ALJ's decision, this Court must consider all evidence of record, regardless of whether the ALJ cited to it in her decision.")

The Magistrate Judge's inclusion of the inconsistencies between the report and Plaintiff's testimony regarding walking and leg raising is not an improper post-hoc rationalization.  The ALJ identified the inconsistencies he found in the record.  Additionally, it was not improper for the Magistrate Judge to cite to the record in addition to the decision of the ALJ.

### 2.   The ALJ's Decision Was Supported by Substantial Evidence

The Magistrate Judge correctly found that the ALJ's decision to afford more weight to Dr. Sheikh's report than Dr. Punjabi's was supported by substantial evidence and adequately explained.  The ALJ specifically stated the following regarding the weight he gave the doctors' opinions:

> In assessing the claimant's residual functional capacity, I must also consider any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairment and resulting limitations (20 CDR 416.927 and SSRs 96-2p and 96-6p).

> As previously noted, findings of fact made by State agency medical and psychological consultants, and other program physicians and psychologists, regarding the nature and severity of an individual's impairments are treated as expert opinion evidence of nonexamining sources.  While I am not bound by State agency findings, they cannot and have not been ignored.
>
> I have carefully considered the assessment made by the State agency in this case (Exhibit 1A), that the claimant can do less than the full range of light work, and give it great weight.  The opinion is well supported by medically acceptable clinical, laboratory or diagnostic techniques; and the opinion is not inconsistent with the evidence in the case record.
>
> However, I can give the assessment of the physical consultative examiner only limited weight (Exhibit 6F) *[Dr. Punjabi's Medical Source Statement]*.  Although his examination indicated that the claimant's gait and station was normal and that the claimant had full motor strength, he inconsistently finds that the claimant can only stand and walk for one hour in an eight-hour day.  This limitation appears to be based on the claimant's subjective complaints, without professional balance or objectivity.  There is nothing in the evidence that would support this limitation.

(R. at 74-75.)  Additionally, the ALJ specifically cited Dr. Punjabi's Medical Source Statement

and Consultative Examination Report throughout his Decision, and noted the following which

applies to his decision to afford Dr. Punjabi's opinion less weight:

> At the time of the consultative examination in March 2012 (Exhibit 7F) *[Dr. Punjabi's Consultative Examination Report]*, her gait was normal and her station stable.  There was no swelling of her knee and she had full flexion-extension, with minimal effusion in the right knee (Exhibit 6F) *[Dr. Punjabi's Medical Source Statement]*.
> . . .
> At the time of the consultative examination in March 2012 (Exhibit 7F) *[Dr. Punjabi's Consultative Examination Report]*, the claimant had no motor, sensory, or reflex loss.  Straight leg raising was negative and the claimant's gait was normal.
> . . .
> Regarding the claimant's physical impairments, the record fails to show the claimant requiring any current emergency room treatments, hospitalizations, significant active treatment, or significant office care other than for routine maintenance, and there have been no significant increases or changes in prescribed medications reflective of an uncontrolled condition.  She received on injection for her knee (Exhibit 16F) *[Dr. Weiss Treatment Records]* and only a recent short course of physical therapy for her "lumbago" (Exhibit 20F) *[Physical/Occupational Therapy Records]*.  Physical examination in March 2012 was basically within normal limits (Exhibit 7F) *[Dr. Punjabi's Consultative*

*Examination Report]*.  Furthermore, the record reveals no significant evidence of neurologic compromise which would affect the claimant's ability to stand or walk to the degree alleged.

. . .

In addition, she goes to church twice a week – on Wednesday for Bible study and to a two-hour service on Sunday.  That she goes to church services and attends Bible study demonstrates . . . an ability to be around other people; and some amount of physical ability – e.g., the ability to travel to and from church and to sit and/or stand while there.  . . . She is able to ride the bus and the subway, which shows a degree of physical functioning and an ability to be around others. . . .

(R. at 69-74.)  The aforementioned findings show that the ALJ's decision to afford little weight to Dr. Punjabi's assessment that Plaintiff could only stand and walk for one hour in an eight-hour day because it was inconsistent with Dr. Punjabi's other findings (e.g., that she had normal gait, full motor strength, station stable, no swelling of her knee and full extension, no motor, sensory, or reflex loss, etc.) and unsupported by the record, was supported by substantial evidence.  The additional citations to the record by the Magistrate Judge constitute additional support for the ALJ's findings.

### 3.  The Social Security's Regulations Regarding Evaluation of Medical Source Opinions

Additionally, Plaintiff's argument that the Magistrate Judge failed to address the regulations regarding medical source opinions is unavailing.  Although the R&R does not outline the regulations in detail, the Magistrate Judge correctly noted in the R&R, the ALJ was "entitled to credit Dr. Sheikh's report to the extent that it was, in fact, supported by the other evidence." (Doc. No. 18 at 6.)  The Commissioner considers and evaluates medical opinions, along with the rest of the relevant evidence received.  20 C.F.R. § 416.927.  The Commissioner considers medical source evidence, but the final decision regarding the claimant's residual functional capacity is the decision of the Commissioner.  20 C.F.R. § 416.927(d)(2).  The ALJ must consider findings and opinions of State agency medical and psychological consultants and other

program physicians, psychologists, and other medical specialists as opinion evidence, but the

ALJ is not bound by any such findings.  Id.  In deciding the weight to give to medical opinions,

the following factors are considered:

> (1)  Examining relationship.  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

> (2)  Treatment relationship.   Generally, we give more weight to opinions from your treating sources . . .

> (3)  Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. . . .

> (4)  Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

> (5)  Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

> (6)  Other factors.  When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion.  For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. § 416.927(c).  When there is a conflict in the evidence, the ALJ is entitled to decide

which evidence to credit, so long as the evidence is not rejected for "no reason or the wrong

reason."  Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993).

Here, there were no treating physicians who provided an opinion of Plaintiff's functional

abilities.  Drs. Punjabi and Sheikh were both Agency physicians.  In general, more weight is

assigned to the opinion of an examining physician than a reviewing physician.  However, it is not

the only factor to be considered in assigning weight.  The ALJ properly considered supportability

and consistency, and his decision to assign less weight to Dr. Punjabi's opinion regarding the stand and walk limitation was adequately explained and supported by substantial evidence.

The Magistrate Judge properly reviewed the ALJ's considerations and findings as to the evidence in the record, and did not err in finding that the ALJ's decision was supported by substantial evidence.

**B.      Objection Two:  "The Magistrate Judge erroneously found that: '[T]he ALJ's decision not to credit Dr. Goode's findings of disabling limitations was supported by substantial evidence.'"**

In the second objection, Plaintiff contends the ALJ's decision to credit Thomas Fink, Ph.D., a State agency, non-examining, record-reviewing psychologist, over Dr. Dana Goode, the State agency examining psychologist, was not supported by substantial evidence.  (Doc. No. 19 at 5.)  She argues that the Magistrate Judge failed to address Plaintiff's argument that the ALJ did not properly weigh Dr. Goode's report under the regulatory factors.  Plaintiff asserts Dr. Goode's report should have been given substantial weight, and that the ALJ's rejection of Dr. Goode's report because he found that Dr. Goode had been misled by Plaintiff was an error. Plaintiff claims that a person with psychiatric illness necessarily lends herself to uncertain behavior and it was "absurd" to conclude that she dishonestly reported psychotic symptoms. (Doc. No. 19 at 7.)

Contrary to Plaintiff's argument, the ALJ went into detail explaining why he afforded little weight to Dr. Goode's report and significant weight to Dr. Fink's report.  The ALJ adequately evaluated all relevant evidence and explained the basis for his conclusions, including the conflicting evidence, his credibility determinations, and the weight given to the physician opinions.  He explained as follows:

> Although the claimant's psychological impairments may meet some of the criteria of part "A" of Listing 12.02 (Organic Mental Disorders) and Listing 12.04

14

(Affective Disorders), neither the functional limitations required by part "B" of the listings, nor the criteria required by part "C" of the listings are met.

The medical evidence shows that the claimant recently began psychological treatment (Exhibit 4F) *[WES Health Center Medical Evidence of Record dated November 3, 2011 to February 15, 2012]*. At the initial evaluations, the claimant was alert, oriented, and cooperative. Although she was depressed, she denied visual and auditory hallucinations. She was diagnosed with a major depressive disorder and assessed the claimant's Global Assessment Functioning (GAF) score as 57 (See DSM-IV for a description of GAF Scale in which a score of 51 through 60 indicates moderate impairment in social or occupational functioning). The claimant apparently followed up only once with her treatment provider and was noted to be noncompliant (Exhibit 14F) *[WES Health Center Outpatient Treatment Records dated November 3, 2011 to June 6, 2012]*.

The claimant underwent a consultative psychological examination in February 2012 (Exhibit 5F) *[Dr. Goode's Report dated February 27, 2012]*. It does not appear that the claimant was entirely forthcoming [with] the examiner, reporting hearing voices daily when she had specifically denied this symptom the month before. Based on the claimant's subjective reports, the examiner diagnosed a major depressive disorder with psychotic features, and a learning disorder, but there is nothing in the evidence that supports these diagnoses.

I have considered both the testimony and statements of the claimant, as well as the documentary medical evidence, in assessing the claimant's limitations of functioning in the areas considered in Part "B" of the listing.

In assessing the claimant functional limitations as considered in part "B" of the listing, I have given great weight to the assessment of the State agency psychological consultant (Exhibit 1A) *[Dr. Fink's Mental Residual Functional Capacity Assessment]* who found that the claimant has no more than moderate psychological limitations. Findings of fact made by State agency medical and psychological consultants, and other program physicians and psychologists, regarding the nature and severity of an individual's impairments are treated as expert opinion evidence of nonexamining sources (SSR96-6p). Although the State agency psychological consultant did not examine the claimant, he provided specific reasons for his opinions about the claimant's limitations showing that they were well grounded in the evidence of record. The evidence received after the State agency determination does not support more than moderate limitations.

I have also considered the opinions of the psychological consultative examiner who finds multiple marked mental limitations (Exhibit 5F) *[Dr. Goode's Report]*. As noted, this does not appear that the claimant was entirely forthcoming with the examiner at this one time evaluation. In addition, this assessment is clearly not supported by the record as a whole. I do not find the consultative examiner's

assessment persuasive in view of the fact that she is not a treating source and there is no evidence to support the degree of limitation found.

The first area of the "B" criteria, "activities of daily living," . . . claimant can care for her personal needs. She also cares for her financial affairs and is representative payee for her 15-year-old daughter's Social Security benefits. She has reported that she is able to shop, cook, and clean (Exhibit 5F). She is able to take public transportation. I find that the claimant has a mild limitation in this area of function.

The second area of the "B" criteria, "social functioning" . . . the claimant communicates adequately. She goes to church twice a week. She maintains a good relationship with her mother and her daughter. I find that the claimant has a moderate degree of limitations in this area of function.

The third area of the "B" criteria, "concentration, persistence and pace," . . . claimant's memory is reported as intact (Exhibit 4F, 5F). However it is reasonable to find that the claimant's depression and past drug use would cause some limitations in this area. I find that the claimant suffers a moderate impairment in this area of function.

The last area of function . . . under the "B" criteria concerns "episodes of decompensation." . . . I find that the evidence does not show that the claimant has ever exhibited episodes of decompensation.

Because the claimant's mental impairments do not cause at least two "marked limitations or one "marked" limitation and "repeated" episodes of decompensation, the "part B" criteria are not satisfied.

. . .

Although the claimant has asserted that she also exhibits significant psychological impairments, the totality of the evidence fails to support the existence of any significant pathology capable of producing disabling limitations as alleged by the claimant.

I find that the claimant grossly exaggerates her functional limitations and afford her testimony little weight. . . .

. . .

As discussed at step three of the sequential evaluation, significant weight has also been given to the opinions of the State agency psychological consultant (Exhibit 1A) in assessing the claimant's mental limitations. However, little weight can be given to the assessment of the psychological examiner (Exhibit 5F) that is not supported by the evidence of the record, or even the claimant's own testimony.

16

(R. at 70-75.)

As noted, pursuant to 20 C.F.R. § 416.927(c), in general, more weight is assigned to the opinion of an examining physician than a reviewing physician.  However, it is not the only factor to be considered in assigning weight.  Contrary to Plaintiff's objection, the Magistrate Judge properly referenced this regulation.  (Doc. No. 18 at 9.)  The Magistrate Judge also properly considered Dr. Goode's findings, Dr. Fink's findings, the mental health evaluations performed at the Warren E. Smith ("WES") Health Centers, Plaintiff's daily activities and social contacts, the ALJ's credibility determinations, and the inconsistencies in the record, in finding that the ALJ's decision was supported by substantial evidence.

The ALJ's decision to assign less weight to Dr. Goode's opinion regarding Ms. Peel's mental impairment was adequately explained and supported by substantial evidence.  The ALJ listed in detail Dr. Goode's findings, but found that the severity of the restrictions was not supported by the other substantial evidence.  As with the first objection, pursuant to 20 C.F.R. § 416.927(c), the ALJ properly considered his assessment of the consistency and supportability of the reports in light of all the evidence and his determination as to credibility.

### C.    Objection Three:  "The Magistrate Judge erroneously found that Plaintiff failed to provide adequate proof of a medical requirement to use a cane."

Lastly, Plaintiff objects to the Magistrate Judge's finding that "Grid Rule 201.09" does not apply because Plaintiff failed to demonstrate a "medical requirement" that she use a cane.  (Doc. No. 19 at 7-9.)  Vocational Guideline Rule 201.09, referred to as "Grid Rule 201.09," provides that if an individual is "closely approaching advanced age," has limited education, unskilled or no previous work experience, and is "limited to sedentary work as a result of severe medically determinable impairments," they must be found disabled.  20 C.F.R. Part 404, Subpart

P, App. 2.  Plaintiff asserts that she should be found disabled under this rule because she should be found to be limited to "sedentary work."  Plaintiff argues the ALJ's residual functional capacity finding that she is capable of performing "light work" was not supported by substantial evidence.  (Doc. No. 19 at 8.)  Plaintiff argues that her use of a cane is further support of her limitations, not the only evidence, and the Magistrate Judge failed to consider the other evidence. Plaintiff contends that the Magistrate Judge improperly provided "post-hoc rationalization" by holding that Plaintiff was required to prove that the cane was "medically required" and by referring to Social Security Ruling 96-9p.[4]  (Doc. No. 19 at 9.)

     Initially, in Plaintiff's initial Brief and Statement of Issues, in support of her assertion that she should have been found to be disabled under Grid Rule 201.09, Plaintiff argued that the ALJ erred in rejecting Dr. Punjabi's opinion regarding her physical limitations, that she uses a straight cane, and that once she turned 50 she was "closely approaching advanced age."  (Doc. No. 11 at 16-18.)  Regarding the cane, Plaintiff cited to the transcript of the hearing held before the ALJ, wherein she testified that she uses a cane that was prescribed by her primary care physician.  (Id. at 17.)  As discussed above, the Magistrate Judge properly found that the ALJ's decision to assign limited weight to Dr. Punjabi's opinion was supported by substantial evidence. Therefore, it was not error for the Magistrate Judge to focus on the straight cane evidence in the R&R under the section addressing Vocational Guideline Rule 201.09.

     Second, the ALJ's decision to find that Plaintiff has the residual functional capacity to perform light work was supported by substantial evidence.  See 20 C.F.R. § 404.1546; Zirnsak v.

---

[4]  Social Security Ruling 96-9p states in relevant part:  "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. . . ."

Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (ALJ must determine the claimant's residual function capacity, which must be supported by medical and other evidence).   Plaintiff relies on her testimony that she needed a cane.   The only other evidence in the record was a note in medical records by a nurse practitioner that she would mail a "cane letter."  (R. at 282.)   The ALJ specifically acknowledged that Plaintiff testified to having used a cane for the past one and a half years, that she testified that she "cannot work because of back and right knee pain," and that she can "only stand for 30 minutes and walk for one or two blocks."  (R. at 73.)   The ALJ further recognized Plaintiff's "severe impairments which cause limitations on her ability to perform work-related activities."  (Id.)   However, the ALJ also went into great detail explaining why he did not find Plaintiff's claims regarding her physical limitations to be fully creditable.  (Id. at 73-75.)   In fact, the ALJ concluded that Plaintiff "grossly exaggerates her functional limitations," and therefore afforded her testimony little weight.   As noted, the ALJ reviewed the medical evidence, Plaintiff's daily and social activities, and other factors.   The ALJ concluded that there was "nothing in the evidence that would support [a] limitation [that she can only stand and walk for one hour in an eight-hour day," and that the "record fail[ed] to provide any objective medical evidence that the claimant's impairments are as limiting as her hearing testimony indicates." (Id.)   It is clear that the ALJ "explicitly weigh[ed] the evidence, and explain[ed] a rejection of any of the evidence."   Sykes v. Apfel, 228 F.3d 259, 266 n.9 (3d Cir. 2000) (internal citations omitted).

Third, as noted, the ALJ does not have to make reference to every relevant medical note in a voluminous medical record, but rather, the ALJ, as the fact finder, must consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.   See Reefer v. Barnhart, 326 F.3d 376, 381-82 (3d Cir. 2003).   The

Magistrate Judge's consideration of SSR 96-9p provides further legal support for the ALJ's conclusion that the record did not include any medical evidence to support Plaintiff's claimed limitations. The discussion was not a post-hoc rationalization. Rather, it was a response to the briefing of the parties and further elaboration of the findings of the ALJ. The R&R included sound legal analysis to highlight why Plaintiff's failure to provide objective proof that the cane was medically required was problematic to Plaintiff's case.

Finally, even if the ALJ had failed to consider the cane, there would not be grounds for remand. It is not error for an ALJ not to rely on the claimant's use of a cane when there is insufficient evidence in the record. As the court held in <u>Williams v. Colvin</u>:

> While Williams did testify that she required the use of a cane, the ALJ was not required to accommodate such use in the residual functional capacity determination. Social Security regulations provide that an ALJ will not accommodate the use of a cane unless the claimant first provides "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]" SSR 96–9p. Absent such documentation, an ALJ need not accommodate the use of a cane in a residual functional capacity assessment, even if the claimant was prescribed a cane by a doctor.

Civil Action No. 3:13-cv-2158, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014); <u>see also</u> <u>Howze v. Barnhart</u>, 53 Fed. App'x 218, 222 (3d Cir. 2002) (finding no error in ALJ failing to address use of cane because evidence, including physician indication that it was needed, was insufficient to find it was medically necessary); <u>Schade v. Colvin</u>, Civil Action No. 13-1071, 2014 WL 320133, at *8-9 (W.D. Pa. Jan. 29, 2014) (finding that "[g]iven that the ALJ specifically questioned Plaintiff about his use of the cane . . . it cannot be said that the ALJ 'failed to consider' Plaintiff's use of a cane," and the ALJ did not err in not including a cane requirement in his RFC assessment because there was no evidence in the record of need other than plaintiff's own testimony); <u>Rivera v. Astrue</u>, Civil Action No. 08-1971, 2009 WL 235353,

at *5 (E.D. Pa. Jan. 29, 2009) (ALJ did not err in failing to consider cane's impact and in not finding a cane was medically necessary when there was only a single treatment note prescribing a cane). As such, the Magistrate Judge's analysis was proper and correct, and did not amount to post-hoc rationalization.

## VI.    CONCLUSION

For the foregoing reasons, the Court will approve and adopt the Report and Recommendation of Magistrate Judge Jacob P. Hart. (Doc. No. 18.)

An appropriate Order follows.